Chester A. SHEPARD,
Petitioner-Appellant,
v.
Dale E. FOLTZ, Warden, State Prison of Southern Michigan, and Frank J. Kelley, Attorney General of Michigan, Respondents-Appellees.

No. 84–1537.

United States Court of Appeals,
Sixth Circuit.

Argued July 15, 1985.

Decided Aug. 30, 1985.

Rehearing Denied Oct. 10, 1985.

Chester A. Shepard, Jody LeWitter (argued), Detroit, Mich., for petitioner-appellant.

Frank J. Kelley, Atty. Gen. of Mich., J. Peter Lark, Thomas A. Kulick (argued), Asst. Atty. Gen., Corrections Div., Criminal Section, Lansing, Mich., for respondents-appellees.

Before MARTIN, CONTIE and WELLFORD, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Chester Shepard appeals from the district court's denial of his application for a writ of habeas corpus. For the reasons that follow, we affirm the decision of the district court.[1]

---

1. In addition to the claims that we consider on this appeal, Shepard also asserts in his appellate brief that he was denied his sixth amendment right to a fair and impartial trial when the trial judge had several contacts with the jury during its deliberations and that he was denied his sixth amendment right to be present at every stage of the trial when the judge delivered supplemental instructions in Shepard's absence. In the district court, these issues were presented as

A Michigan jury convicted Shepard of the first degree murder of Leroy Parham, a reputed drug dealer. The conviction was based upon Michigan's felony murder rule, M.C.L.A. § 750.316, on the theory that the killing was perpetrated during the course of a robbery. As a result of the conviction, Shepard is serving a mandatory life sentence in state prison.

The key government witness at trial was William Davis, a heroin addict and a participant in the murder of Parham. Davis testified that he, Shepard, and Johnny Ulmer, who was Shepard's codefendant, originally decided to kidnap Parham and then use him to gain access to the apartment of Alonzo Malone, another reputed drug dealer, in order to rob him. The plan later evolved to simply robbing Parham. Davis drove his car to Shepard's house where Shepard was waiting with an object, approximately two to three feet long, wrapped in newspaper. Davis later identified the item, which Shepard had placed in the trunk of the car, as a single shot, 12 gauge, sawed-off shotgun.

Two days after Shepard placed the gun in the car, Davis, Shepard, and Ulmer drove to Parham's apartment in Ann Arbor. Davis and Shepard hid in the bushes outside the apartment; Davis had a .32 caliber revolver and Shepard had the shotgun. When Parham approached, Davis heard a shot and then a scream. Davis testified that Shepard said he shot Parham when he went for a gun. After the shooting, Shepard reloaded the gun and he and Davis ran. Two other witnesses testified that they heard Shepard state that he had shot Parham.

Shepard's defense was alibi. He testified that he was not in Ann Arbor on the day of the murder. His mother testified that Shepard was at home in Detroit on the night of the murder because she remembered that he had asked her to leave car fare for him to go to the unemployment office the next day. Shepard's records from the Michigan Employment Security Office in Detroit indicated that he kept his appointment on the day after the murder.

Prosecution witnesses testified that Shepard was in Ann Arbor on that day. Two witnesses who met Davis in prison after the murder testified that Davis told them that he and a person named "Chico" killed Parham and that Shepard had nothing to do with the crime. One of the witnesses testified that Davis said he implicated Shepard in the killing because Shepard had stolen Davis' pistol and had become involved with his girlfriend.

On this appeal, Shepard claims that he was denied due process of law when the state trial court failed to instruct the jury on lesser included offenses to first degree felony murder. The district court refused to entertain this claim on habeas review because Shepard failed to object to the jury instruction at trial and because Shepard failed to meet the "cause and prejudice" standards of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ *Sykes'* cause and prejudice test is designed to prevent federal habeas review of claims that were not considered by the state courts because of the petitioner's failure to observe a state procedural rule. The *Sykes* test is not applicable if the state court did not rely upon the petitioner's failure to comply with the state procedural rule. *See County Court of Ulster v. Allen,* 442 U.S. 140, 148–54, 99 S.Ct. 2213, 2220–23, 60 L.Ed.2d 777 (1979); *Gilbert v. Parke,* 763 F.2d 821, 824 (6th Cir.1985); *Raper v. Mintzes,* 706 F.2d 161 (6th Cir. 1983); *Hockenbury v. Sowders,* 620 F.2d 111 (6th Cir.1980), *cert. denied,* 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 367 (1981).

On appeal from the jury conviction, Shepard asserted in the state appellate court that the trial court's failure to instruct the jury on lesser included offenses was error. In its opinion, the Michigan Court of Appeals stated: "Of the remaining twelve issues, only five have been preserved and since no miscarriage of justice has been shown, the remaining seven issues do not require discussion." *People v. Ulmer,* 78 Mich.App. 319, 259 N.W.2d 875, 877 (1977).

errors of state law only, and the constitutional claims now asserted are not properly before us.

The court then proceeded to decide on the merits six, not five, claims of error. In discussing one of those claims of error, the court held: "Defendants requested that no instruction on lesser included offenses be given. It was not error to accede to this request." *Id.* It is unclear from the court's opinion whether the court's decision with respect to the instruction on lesser included offenses was based upon a procedural bar—Shepard's failure to object at trial precluded him from asserting the error on appeal—or was decided on the merits—the trial court's failure to instruct on lesser included offenses was not error given Shepard's failure to request those instructions. The district court held that Shepard's procedural default was a "substantial basis" of the state appellate court's rejection of Shepard's claim and that, based upon our decision in *Hockenbury v. Sowders, supra,* Shepard was required to meet the *Sykes* cause and prejudice test.

■ In *Hockenbury v. Sowders* we held that application of the *Sykes* cause and prejudice test was appropriate when the state court explicitly asserted, as alternative grounds of decision, the petitioner's procedural default and rejection of the claim on the merits and when the procedural default was a "substantial basis of the state court's denial of petitioner's claim." 620 F.2d at 115. That rule is not applicable here because it is not clear from the "plain language of the [state court opinion]," *id.,* that Shepard's procedural default was invoked as a basis for the rejection of the claim. The state appellate court apparently invoked a procedural bar as an alternative ground of decision with respect to *one* of the six claims of error, but *which one* is not clear.

■ When it is unclear from the face of the state court opinion whether the state court relied upon a procedural bar as a basis for rejecting a claim, the appropriate procedure is for the district court to examine the arguments presented to the state court:

(1) if the state prosecutor only argued the merits of the petitioner's claim before the state court and failed to raise the procedural default issue, the federal court may assume that the state court ruled only on the merits; (2) if the prosecutor relied solely on the procedural default, the federal court may assume that that was the only basis for the state court's decision; and (3) if the prosecutor argued in the alternative, the federal court may assume that the state court did not rely solely on the merits unless it says so.

*Raper v. Mintzes,* 706 F.2d at 164. We have examined the brief filed by the prosecutor in the state appellate court. That brief clearly asserts both that the appellate court is without authority to decide the merits due to the procedural bar and that, if the court should reach the merits, the claim should be rejected. Under these circumstances, the district court correctly determined that Shepard was required to satisfy the *Sykes* cause and prejudice standard. *See Gilbert v. Parke,* 763 F.2d at 824–25; *Raper v. Mintzes,* 706 F.2d at 164. Shepard does not suggest any cause for the default or any prejudice resulting from the asserted error. The district court therefore properly refused to entertain the claim.[2]

Next, Shepard argues that he was denied due process when the state trial court instructed the jury that:

> *where the jury finds the killing occurred in the perpetration of, or an attempt to perpetrate a robbery, that the jury need not find malice or intent or deliberation because under these circumstances the statute* setting forth the charge of First Degree Murder committed during the course of one of the felonies named in the statute, in this case being robbery, armed, or attempted robbery, armed, *presumes that these necessary elements of malice or intent or deliberation [exist]....* (emphasis added)

and that a trial court's decision to permit a defendant to take an "all or nothing" approach to jury instructions does not violate due process, *see Look v. Amaral,* 725 F.2d 4, 9 (1st Cir.1984).

---

**2.** We note, moreover, that asserted errors of state law do not provide a basis for federal habeas corpus relief, *see Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984),

Shepard urges that this instruction creates a conclusive presumption of malice rather than permits a factual inference of malice and that the instruction therefore violates *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The state argues that the district court properly held that Shepard was required to, and failed to, meet the *Sykes* cause and prejudice standard because he failed to object to the instruction at trial. In *Engle v. Koehler,* 707 F.2d 241 (6th Cir.1983), *aff'd by an equally divided court,* —— U.S. ——, 104 S.Ct. 1673, 80 L.Ed.2d 1 (1984), we noted that Michigan courts do not enforce a contemporaneous objection rule against failures to object to *Sandstrom* violations. *Id.* at 244 (citing *People v. Wright,* 408 Mich. 1, 30 n. 13, 289 N.W.2d 1 (1980)). We concluded that a federal habeas petitioner asserting a *Sandstrom* violation therefore need not satisfy the cause and prejudice standard. *Engle v. Koehler,* 707 F.2d at 244. In a recent decision, however, we questioned our prior determination whether Michigan enforces a contemporaneous objection rule with respect to *Sandstrom* violations, and, in any event, we held that a federal habeas petitioner must meet the *Sykes* test if the Michigan courts in fact applied such a rule. *See McBee v. Grant,* 763 F.2d 811, 816 (6th Cir.1985) (citing *People v. Woods,* 416 Mich. 581, 331 N.W.2d 707 (1982), *cert. denied,* 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983)).[3]

**3.** Shepard does not argue that, given the current state of the law in Michigan, reliance by the Michigan Court of Appeals on the procedural default was not an adequate and independent state ground of decision.

**4.** Shepard argues that the "law of the case" indicates that the jury was required to find a malicious intent in his case because the Court of Appeals of Michigan, in initially reversing his conviction, had stated in dictum that "to eliminate the possibility of error on retrial, if that occurs, we recommend consideration of *People v. Carter,* 387 Mich. 397 [197 N.W.2d 57] (1972), and *People v. Fountain,* 71 Mich.App. 491 [248 N.W.2d 589] (1976), before ruling on a motion to dismiss the felony murder charge and before instructing the jury on that charge." *People v. Ulmer and Shepard,* No. 19184–19186 (Mich.Ct. App.1977). *Fountain* held that the element of malice should be submitted to the jury in a felony-murder case. *Carter* stated that in such a

In light of Shepard's failure to object at trial and the refusal of the Michigan Court of Appeals to entertain his claim due to the procedural default, the district court properly required Shepard to satisfy the cause and prejudice test. Shepard does not suggest any cause for the default or prejudice resulting from the asserted error. The district court properly refused to consider the *Sandstrom* claim.[4]

The judgment of the district court is affirmed.

case malice "may be implied." Before Shepard could be retried, however, the Court of Appeals of Michigan amended its prior order and affirmed Shepard's conviction. *See People v. Ulmer,* 78 Mich.App. 319, 259 N.W.2d 875 (1977). The language from the state appellate court's opinion therefore cannot provide the law of the case. Moreover, the Michigan Supreme Court has made it clear that the common law felony murder doctrine was in effect prior to its decision in *People v. Aaron,* 409 Mich. 672, 299 N.W.2d 304 (1980). *See Aaron,* 409 Mich. at 923, 299 N.W.2d 304; *see also People v. Lonchar,* 411 Mich. 923, 926–27, 308 N.W.2d 103 (1981).

Finally, we note that we have previously held that the Michigan Supreme Court's decision not to give retroactive effect to *Aaron* does not violate due process. *See Bowen v. Foltz,* 763 F.2d 191 (6th Cir.1985).